Filed 8/12/25  In re J.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J.S. et al., Minors. | C102615 |
| C.S., | (Super. Ct. Nos. 23AD00182, 23AD00183) |
| Petitioner and Respondent, | |
| v. | |
| J.B., | |
| Objector and Appellant. | |

J.B. (mother) appeals from family court orders terminating her parental rights and declaring J.S. and K.S. (collectively, minors) free from her parental control on the basis of abandonment under Family Code section 7822.[1]  Mother contends:  (1) the orders must be conditionally reversed due to lack of compliance with the Indian Child Welfare

---

[1]  Undesignated statutory references are to the Family Code.

1

Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law, and (2) the evidence was insufficient to support the family court's finding that she abandoned minors within the meaning of section 7822. We conclude a limited remand to comply with ICWA and related California law is necessary.

## I. BACKGROUND

J.S. and K.S. were born in 2016 and 2018, respectively. D.S. (father) and mother never married, but they lived together until the end of 2019. Father sought custody of minors in early 2020 after mother overdosed on drugs while watching minors. At the end of 2021, mother's supervised visits with minors were terminated after she failed a drug test. As relevant to this proceeding, in August 2022, Amador County Superior Court granted father full legal and physical custody of minors. Mother was ordered to not have any contact or visitation with them. The court ordered, "If [mother] wishes to make any changes to child custody, she must undergo a full psychological evaluation by a licensed doctor and have an established treatment plan in place."

Father married C.S. (stepmother) in September 2023. Later that year, stepmother filed stepparent adoption requests and petitions to declare minors free from mother's parental custody and control for stepparent adoption due to abandonment under section 7822. The petitions alleged mother had not had any contact with minors since December 2021. Father consented in writing to the petitions and completed parental notification of Indian status (ICWA-020) forms indicating minors had no Indian ancestry. Stepmother also submitted ICWA-010(A) attachments indicating she had inquired of a sister and an aunt to minors, and these inquiries gave her no reason to believe minors had Indian ancestry. The record indicates an ICWA-020 form was not filled out for mother because she could not be located.

A court investigator conducted an investigation regarding stepmother's petition. The investigator did not have any contact information for mother, and therefore did not

interview her. The probate investigator's report recommended granting stepmother's petition. The report did not address ICWA.

Following a trial in which father, mother, and the probate investigator testified, the family court granted stepmother's petition on the basis that for the statutory period of one year mother intended to abandon and did in fact abandon minors and provided no support. The court found that for more than a year, mother had no communication with minors.[2] The court explained that mother did not follow the clear path that had been paved for her to reestablish visitation with her children. The court also found "she never made any attempt whatsoever to actually follow the Amador County court's order." The court did not agree with mother that she made best efforts to satisfy the conditions. Further, the court found mother did not move to reconsider or modify the order. The court also found no evidence of any attempt to stop the drug use that resulted in mother's supervised visits being suspended or to treat any mental health issues.

The family court entered orders terminating mother's parental rights, and mother filed this appeal. Neither the orders nor the court's oral ruling mentioned ICWA.

## II. DISCUSSION

### A. ICWA

Mother contends the orders terminating her parental rights must be conditionally reversed due to lack of compliance with ICWA and related state law. We agree.

Congress enacted ICWA to protect Indian children and "to promote the stability and security of Indian tribes and families" by establishing minimum standards regarding the removal of Indian children from their families. (25 U.S.C. § 1902; see *In re Dezi C.* (2024) 16 Cal.5th 1112, 1129.) "[Welfare and Institutions Code s]ection 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child.

---

[2] Father testified mother had not had any contact with minors since at least March 2022.

3

Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child.  ([Welf. & Inst. Code,] § 224.2, subd. (a).)" (*In re Dezi C.*, *supra*, at pp. 1131-1132, fn. omitted; see also Cal. Rules of Court, rule 5.481(a).)  This includes a petition pursuant to section 7822.  (*Adoption of M.R.* (2022) 84 Cal.App.5th 537, 541.)  A court must determine a minor's Indian status before freeing the child from a parent's custody or control pursuant to either section 7820 or 7822.  (*Adoption of M.R., supra*, at p. 541.)

Rule 5.481 of the California Rules of Court provides that where, as here, a party is seeking a declaration freeing the minor from the custody or control of at least one of the parents, or termination of a parent's parental rights, or a subsequent adoption, that party "must ask . . . the parents, Indian custodian, or legal guardians, extended family members, others who have an interest in the child, . . . whether the child is or may be an Indian child" and "must complete the *Indian Child Inquiry Attachment* (form ICWA-010(A)) and attach it to the petition."  (Cal. Rules of Court, rule 5.481(a)(1).)  Further, the court must, at the first appearance by a parent, ask whether he or she knows or has reason to know the child is an Indian child, instruct the parties to inform the court of any subsequently received information that provides a reason to know the child is an Indian child, and order the parent to complete an ICWA-020 form.  (Cal. Rules of Court, rule 5.481(a)(2)(A)-(C).)

Mother argues the court and the probate investigator failed to comply with the inquiry requirements under Welfare and Institutions Code section 224.2 and California Rules of Court, rule 5.481.  She argues there is no evidence that the court or the probate investigator interviewed mother, adequately interviewed father, or interviewed extended family members, including the maternal grandmother who was present at trial.  Mother notes the court made no findings under ICWA and contends the record does not support an implied finding.

4

Although father completed ICWA-020 forms indicating minors had no Indian ancestry, there is no evidence in the record that mother was asked at any time about possible Indian heritage or that she received or completed an ICWA-020 form. We conclude that, at a minimum, the failure to make any inquiry of mother when she appeared at trial requires conditional reversal. (*In re Dezi C., supra*, 16 Cal.5th at p. 1136.) We are unpersuaded by stepmother's suggestion that we may reject mother's argument for lack of prejudice because she did not assert on appeal that she has any Indian heritage. (*See id*. at pp. 1136-1145 [explaining that assessing juvenile court's implied ICWA finding for prejudice by requiring appealing parent to make a proffer to the Court of Appeal of extra-record evidence would improperly shift the burden of proof to parents].) Our reversal is conditional because, as we explain next, mother's challenges to the family court's determination of abandonment are without merit.

## B.     *Abandonment*

Mother contends stepmother failed to meet her burden under section 7822 to show mother abandoned minors.

"Under section 7822, a court may declare a child free from a parent's custody and control if the parent has abandoned the child." (*Adoption of Allison C*. (2008) 164 Cal.App.4th 1004, 1010.) Abandonment occurs when "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) Abandonment and intent are questions of fact for the trial judge. (*Allison C., supra*, at p. 1011.) The relevant findings must be supported by clear and convincing evidence. (§ 7821.)

Mother argues substantial evidence did not support the court's finding that she "left" minors or that she intended to abandon them.

We "must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When

5

reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

### 1. *Mother Left Minors*

Mother argues she did not leave minors in the care and custody of father because they were taken from her by court order. "In determining the threshold issue of whether a parent has 'left' . . . her child, the focus of the law is 'on the voluntary nature of a parent's abandonment of the parental role rather than on *physical* desertion by the parent.' [Citations.] [¶] Thus, this court has held that a parent will not be found to have voluntarily left a child in the care and custody of another where the child is effectively 'taken' from the parent by court order [citation]; however, the parent's later voluntary inaction may constitute a leaving with intent to abandon the child [citation]. [¶] Numerous appellate decisions have long agreed that the leaving-with-intent-to-abandon-the-child requirement of section 7822 can be established by evidence of a parent's voluntary inaction after an order granting primary care and custody to the other parent. [Citations.] [¶] Simply stated, 'nonaction of the parent after a judicial decree removing the child may convert a [judicial] "taking" into a "leaving" [of a child by the parent].' " (*In re Marriage of Jill & Victor D.* (2010) 185 Cal.App.4th 491, 504.) This is what the family court found in this proceeding. Mother argues she wanted to regain custody of minors, and her only pathway to communication with them was a "futile path since she lacked the financial means to pay for a private evaluation and she was unsuccessful, despite repeated efforts, to find a doctor who was willing to accept her insurance."

Mother's arguments fail because they depend on her testimony, which the trial court did not credit. (See *Adoption of Allison C., supra*, 164 Cal.App.4th at p. 1013 [explaining court was entitled to disbelieve or discount father's testimony that he tried to send minor letters and the court apparently did so because it expressly found father made inadequate efforts to communicate by letters].) The court expressed skepticism that mother ever went to any doctor, and found that if she did, she did so in bad faith. Mother testified she "did have letters written, but I guess maybe that it wasn't considered an evaluation." Further, she testified she saw a psychiatrist for more than a year and she "would get letters saying that [she] was mentally stable and able to care for [her] kids." The court in its ruling observed mother "never presented a letter to the court from that assessment stating that she has no problems and she is capable of maintaining a relationship with her kids." Ultimately, the court concluded mother did not make any attempt "whatsoever to actually follow the Amador County court's order." Substantial evidence supported this conclusion. Further, "[t]his inaction is substantial evidence that [mother] voluntarily surrendered [her] parental role and left the minors within the meaning of section 7822." (*In re Marriage of Jill & Victor D., supra*, at p. 506.)

2. *Mother Intended to Abandon Minors*

"The failure to provide . . . support, or failure to communicate is presumptive evidence of the intent to abandon. If the parent . . . ha[s] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent." (§ 7822, subd. (b).) It is undisputed that mother did not communicate with minors for more than a year. Whether the presumption of abandonment has been overcome satisfactorily is a question of fact for resolution by the trial court. (*In re Marriage of Jill & Victor D., supra*, 185 Cal.App.4th at p. 506.) Additionally, "[i]n determining a parent's intent to abandon, the superior court must objectively measure the parent's conduct, 'consider[ing] not only the number and frequency of his or her efforts to communicate with the child, but the genuineness of' the parent's efforts." (*Adoption of*

7

*A.B.* (2016) 2 Cal.App.5th 912, 923.) "The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period." (*In re Amy A*. (2005) 132 Cal.App.4th 63, 68.) Again, mother argues she made the efforts she was capable of making to obtain a psychological evaluation. Mother's argument is unavailing because the family court did not credit her testimony and concluded that she did not make any genuine efforts to comply with the Amador County order. (See *In re Marriage of Jill & Victor D., supra*, at p. 506 ["Here, the trial court was not required to believe father's testimony regarding his intent and, in light of the other evidence, father's testimony did not overcome the presumption of abandonment"].) She also argues she attempted to open a new case or court dates in Amador County. The trial court found that mother made no motions to modify the order. The trial court's finding that mother intended to abandon minors is supported by sufficient evidence.

### III.  DISPOSITION

The orders terminating parental rights are conditionally reversed and remanded for the limited purpose of compliance with ICWA and the California implementing provisions, including the court's entry of findings related to ICWA at the conclusion of the inquiry.  If, after proper and complete inquiry, minors are found not to be Indian children falling within the provisions of the ICWA, the orders shall be reinstated.  However, if the court concludes that ICWA applies, the court is ordered to conduct a new trial and proceed in accordance with ICWA and California implementing provisions.


/S/
_____
RENNER, J.


We concur:


/S/
_____
DUARTE, Acting P. J.


/S/
_____
FEINBERG, J.

9